❏ Original

CLERK'S OFFICE
A TRUE COPY
Dec 21, 2020
s/ JeremyHeacox
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched* | ) | |
| *or identify the person by name and address)* | ) | Case No. |
| Information associated with three Facebook accounts more | ) | |
| fully described in Attachment A, that are stored at premises | ) | **20-M-496 (SCD)** |
| owned, maintained, controlled, or operated by Facebook Inc., | ) | |
| a company headquartered in Menlo Park, California. | ) | |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before    1-4-21     _____ *(not to exceed 14 days)*
   ❏ in the daytime 6:00 a.m. to 10:00 p.m.    ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to   Hon. Stephen C. Dries, U.S. Magistrate Judge  .
                                                               *(United States Magistrate Judge)*

❏ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
   ❏ for _____ days *(not to exceed 30)*    ❏ until, the facts justifying, the later specific date of _____ .

Date and time issued:    12-21-20. 3:40 pm  _____    *Stephen C. Dries*
                                                      *Judge's signature*

City and state:   Milwaukee, WI  _____    Hon. Stephen C. Dries, U.S. Magistrate Judge
                                                         *Printed name and title*

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

## Certification

     I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

**ATTACHMENT A**

*Property to Be Searched*

To the extent that the information described in Attachment B is within the possession, custody, or control of Facebook, Facebook is required to disclose to the government the information for the following accounts and dates:

| FACEBOOK NAME | FACEBOOK IDENTIFICATION (UID) | DATES |
|---|---|---|
| Dadon Carlito | 100043754003109 | October 01, 2020 to the Present |
| Greg Pdubb Bell | 100001529331352 | October 01, 2020 to the Present |

**ATTACHMENT B**

**Particular Things to be Seized**

**I.    Information to be disclosed by Facebook**

To the extent that the information described in Attachment A is within the possession, custody, or control of Facebook, including any messages, records, files, logs, or information that have been deleted but are still available to Facebook, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Facebook is required to disclose the following information to the government for each user ID listed in Attachment A:

a.    All contact and personal identifying information, including**:** full name, user identification number, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

b.    All activity logs for the account and all other documents showing the user's posts and other Facebook activities;

c.    All photos uploaded by that user ID and all photos uploaded by any user that have that user tagged in them;

d.    All profile information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

2

e.       All other records of communications and messages made or received by the user, including all private messages, chat history, video calling history, and pending "Friend" requests;

f.       All "check ins" and other location information;

g.       All IP logs, including all records of the IP addresses that logged into the account;

h.       All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

i.       All information about the Facebook pages that the account is or was a "fan" of;

j.       All past and present lists of friends created by the account;

k.       All records of Facebook searches performed by the account;

l.       All information about the user's access and use of Facebook Marketplace;

m.       The types of service utilized by the user;

n.       The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

o.       All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

p.       All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

## II.       Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence, and instrumentalities of violations of 18 U.S.C. §§ 1951(a) (Hobbs Act robbery) and 18 U.S.C. 924(c)

3

(use of firearm during a crime of violence), since October 01, 2020, for the user ID's identified on Attachment A, information pertaining to the following matters:

    (a) The relevant offense conduct, any preparatory steps taken in furtherance of the criminal scheme, and communications between Carlos DAVIS, Gregory BELL, and others related to the relevant offense conduct of robbery or Carlos DAVIS's or Gregory BELL's possession of a firearm.

    (b) Evidence indicating how and when the Facebook account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Facebook account owner;

    (c) Evidence indicating the Facebook account owner's state of mind as it relates to the crimes under investigation;

    (d) The identity of the person(s) who created or used the user ID; and

    (e) The identity of the person(s) who communicated with the user ID about matters relating to relevant offense conduct of robbery.

4

**CLERK'S OFFICE**
A TRUE COPY
Dec 21, 2020
s/ Jeremy Heacox

Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
)
Information associated with three Facebook accounts more fully )
described in Attachment A, that are stored at premises owned, )
maintained, controlled, or operated by Facebook Inc., a company )
headquartered in Menlo Park, California. )

Case No. 20-M-496 (SCD)

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____ District of _____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 18 USC Sections 1951(a) and 924 (c) | Hobbs Act Robbery;  Brandishing a firearm during a crime of violence |

The application is based on these facts:

See attached Affidavit.

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Special Agent David Bianchi, FBI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____telephone_____ *(specify reliable electronic means)*.

Date: 12-21-20

_____
*Judge's signature*

City and state: Milwaukee, WI

Hon. Stephen C. Dries, U.S. Magistrate Judge
*Printed name and title*

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, David Bianchi, being first duly sworn, hereby depose and state as follows:

**I. INTRODUCTION, BACKGROUND, TRAINING, AND EXPERIENCE**

1. I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been since January 2020. Since September 2020, I have been assigned to the FBI's Milwaukee Area Violent Crimes Task Force. This Task Force is a multi-jurisdictional law enforcement entity charged with investigating violations of federal law, including bank robberies, commercial robberies and other violent crime matters, defined under Title 18 of the United States Code. I have been trained in a variety of investigative and legal matters, including the topics of Fourth Amendment searches, the drafting of search warrant affidavits, and probable cause. I have assisted in criminal investigations, participating in surveillance, interviews, and debriefs of arrested subjects. As a result of this training and investigative experience, I have learned how and why violent actors typically conduct various aspects of their criminal activities.

2. This affidavit is based upon my personal knowledge, my training and experience, and on information reported to me by other federal, state, and local law enforcement officers during the course of their official duties, all of whom I believe to be truthful and reliable. This affidavit is also based upon police reports, official records, citizen witnesses' statements, consent searches, recorded statements, law enforcement surveillance, surveillance video, social media, court records, telephone records, and public records which I consider to be reliable as set forth herein. The facts of this Affidavit are based upon information obtained from my investigation, as well as information I have received from other law enforcement officers.

3. Based on the investigation to date, I submit that there is probable cause to believe that Carlos L. DAVIS JR. (DOB XX/XX/1986) and Gregory BELL (DOB XX/XX/1989)

conspired to commit and committed two armed robberies in Milwaukee, Wisconsin, on November 23, 2020 and December 05, 2020, in violation of Title 18, United States Code, Sections 1951(a) and 2 (Hobbs Act robbery), and 924(c) and 2 (use, brandishing, and discharge of a firearm during a crime of violence).

4.     This affidavit is submitted in support of an application for a search warrant for Carlos DAVIS's Facebook account, for Gregory BELL's Facebook account, and for evidence of DAVIS's and others' involvement in armed robberies, in violation of Title 18, United States Code, Sections 1951(a), 924(c), on November 23, 2020 and December 05, 2020.

5.     More specifically, I seek authorization to search Facebook's information associated with Carlos DAVIS and Gregory BELL, who are the users associated with the Facebook accounts with the following user names and ID numbers:

| FACEBOOK NAME | FACEBOOK IDENTIFICATION (UID) |
|---|---|
| Dadon Carlito | 100043754003109 |
| Greg Pdubb Bell | 100001529331352 |

6.     The information I seek is stored at premises owned, maintained, controlled, or operated by Facebook, a social networking company headquartered in Menlo Park, California, from at least approximately October 01, 2020 to the present.

7.     Because this affidavit is submitted for the limited purpose of obtaining a search warrant, I have not included each and every fact known to me concerning this investigation. I have attempted to set forth only the facts I believe are pertinent to establishing the necessary foundation for the warrant.

## II.    PROBABLE CAUSE

### November 23, 2020 - Boost Mobile

8.      On November 23, 2020 at approximately 4:32 PM, two individuals (Boost Suspect #1 and Boost Suspect #2) entered the east door of Boost Mobile, located at 2851 N Doctor Martin Luther King Jr Drive, Milwaukee, Wisconsin. Boost Suspect #1 and Boost Suspect #2 spoke with the two store employees, S.A. (DOB XX/XX/1977) and R.H. (XX/XX/1977) for several minutes. At approximately 4:34 PM, a third individual (Boost Suspect #3) entered the north door of the business. Boost Suspect #3 produced a black handgun and made S.A. and R.H. lie on the ground. Boost Suspect #3 made S.A. and R.H. crawl to the storage area in the back of the store where Boost Suspect #1 zip-tied R.H. and Boost Suspect #3 zip-tied S.A. on the ground. Boost Suspect #3 ordered S.A. and R.H. to open the safe, however, they were unable to because they were zip-tied. Boost Suspect #3 then returned to the register area where he loaded a duffel bag with five new cell phones and approximately $1,532 U.S. currency. All three suspects then exited the store and fled in a southwest direction.

9.      Boost Suspect #1 was described as a black male, approximately 5'06" tall, approximately 19-21 years of age.

10.     Boost Suspect #2 was described as a black male, approximately 5''06" tall, approximately 19-21 years of age.

11.     Boost Suspect #3 was described as a black male, approximately 6'00" tall, approximately 29-31 years of age, heavyset, wearing a blue construction hard hat and a "Carhart" style winter jacket, and carrying a black duffel bag.

12.     In-store video surveillance corroborates the accounts of S.A. and R.H.

3

**December 5, 2020 - AT&T**

13.     On December 05, 2020 at approximately 2:40 PM, two individuals (AT&T Suspect #1 and AT&T Suspect #2) entered the AT&T store, located at 1920 E North Avenue, Milwaukee, Wisconsin. AT&T Suspect #1 and AT&T Suspect #2 spoke with a store employee, F.R. (XX/XX/1996) about promotions and deals. F.R. advised the suspects he would need their driver's license or identification to put into the system to see what promotions they qualified for. Both suspects advised they did not have identification on them and left the store. Approximately one minute later, both suspects returned and spoke with F.R. and a second employee, C.H. (XX/XX/1993). F.R. again asked for the suspects' identification at which time AT&T Suspect #1 produced a firearm and put it to C.H.'s back. AT&T Suspect #1 then ordered F.R. and C.H. to the back of the store. A third store employee, N.B. (XX/XX/1995) was in the back room when AT&T Suspect #1 led F.R. and C.H. to the back. AT&T Suspect #1 zip-tied F.R. and C.H. on the ground and instructed N.B. to open the safe and assist him in retrieving Apple iPhone 12 cell phones. N.B. placed 23 iPhone 12 cell phones into AT&T Suspect #1's bag at which time N.B. was instructed to lie down next to C.H. and F.R. AT&T Suspect #1 and AT&T Suspect #2 then fled out of the store.

14.     AT&T Suspect #1 was described as a black male, approximately 6'02", approximately 200 lbs., approximately 25-30 years of age, wearing a yellow construction hard hat, a black mask, a dark colored puffy jacket with a red and yellow or white horizontal stripe around the chest of the jacket, blue jeans, black boots, and carrying a black duffel bag. AT&T Suspect #1 closely matches the description of Boost Suspect #3 from the November 23, 2020 Boost Mobile robbery.

15.     AT&T Suspect #2 was described as a black male, approximately 5'09", approximately 25-30 years of age, wearing a black beanie, a blue surgical mask, a black hooded

sweatshirt, gray or light colored jeans with rips on the front, gray athletic shorts under the jeans, and black boots. AT&T Suspect #2 closely matches the description of Boost Suspect #1 from the November 23, 2020 Boost Mobile robbery.

16.     In-store video surveillance corroborates the accounts of all three store employees.

### AT&T Suspect #1 Identification

17.     Task Force Officer (TFO) Strasser reviewed video footage collected from the areas surrounding both robberies mentioned above. TFO Strasser identified the vehicle suspected of being used by suspects in both robberies as a dark colored Kia Optima, four door, with distinctive and unique identifying features. The vehicle had a light colored sticker on the rear bumper below the driver's side brake light, a plastic tarp like material covering a portion of the roof, an after-market, light-colored steering wheel cover, and a light blue article on the dashboard where the VIN plate cover is located. Surveillance video shows the suspects of the Boost Mobile (2851 N. Dr. Martin Luther King Jr. Dr.) robbery on November 23, 2020 getting into the Kia Optima following the robbery. The vehicle was parked in the 2800 block of N. 4th St., one block to the west of the Boost Mobile. Additionally, video footage was collected which depicted the same Kia Optima travel past the AT&T (1920 E. North Ave.) store approximately ten minutes prior to the robbery on December 05, 2020. The Kia Optima traveled past a Milwaukee County Transit System bus, which captured the vehicle on video cameras. The video showed the Kia Optima had a Wisconsin registration plate of AHF-8572. After the Kia traveled past the AT&T store eastbound, it was captured on video turning northbound on N. Murray St. and then westbound on E. Thomas St. Following the robbery of the AT&T store, the suspects fled northbound on N. Cramer St. towards E. Thomas St. The suspects fled on foot in the same direction the Kia Optima was last seen traveling prior to the robbery.

5

18.     On December 08, 2020 at approximately 4:25pm, Milwaukee Police Officers located the 2015 Kia Optima (WI AHF-8572) parked in front of 2627 N. 24th St., Milwaukee, Wisconsin. The Kia had the same sticker on the rear bumper below the driver's side brake light, a front and rear license plate (AHF-8572) and the plastic covering on the roof of the car. Milwaukee Police Officers observed a black male, whom PO Jung identified using a review of the Milwaukee Police Department's Computer Aided Dispatch (CAD) system, as well as arrest booking photographs, as CARLOS L. DAVIS JR., exit the residence at 2627 N. 24th St. and leave in the Kia Optima. Milwaukee Police Officers conducted surveillance of the Kia before losing sight of it near Brookfield Square Mall.

19.     A records check of DAVIS revealed he is on supervision for Armed Robbery through the Wisconsin Department of Corrections (DOC). His registered address with the Wisconsin DOC is 2627 N. 24th St., Milwaukee, Wisconsin.

20.     On December 09, 2020, Milwaukee Police Detective Dolan and FBI Special Agent Bianchi met with KP, the probation agent assigned to DAVIS. Det. Dolan showed video footage of the Boost Mobile robbery and the AT&T robbery to KP. KP viewed the video footage and positively identified DAVIS as one of the suspects in the AT&T robbery and believed he was one of the suspects in the Boost Mobile robbery, but could not say with certainty due to the quality of the video.

21.     On June 06, 2020, Milwaukee Police Officers responded to a domestic disturbance involving DAVIS and T.H. (DOB XX/XX/1988), whom DAVIS told officers was his ex-girlfriend. TFO Strasser conducted an open source check of Facebook for "T.H.'s" full name which returned the account: facebook.com/tashina.hill.3. A review of the publicly viewable postings associated with this account revealed a Facebook Live video from November 04, 2018 which showed DAVIS wearing a distinct dark colored puffy jacket with a red and yellow or white

horizontal stripe around the chest of the jacket, identical to the jacket worn by AT&T Suspect #1 in the AT&T robbery on December 05, 2020.

22.     On December 09, 2020, Milwaukee Police Officers, who were conducting surveillance at DAVIS's listed address of 2627 N 24th Street, Milwaukee, Wisconsin, observed a 2009 Hyundai Sonata bearing Wisconsin plate AFM-9715 park in front of DAVIS's residence. The vehicle was listed through the Wisconsin Department of Transportation (DOT) to T.H.. The vehicle was occupied by one female who Milwaukee Police Officers recognized as T.H. from T.H.'s DOT picture.

**AT&T Suspect #2 Identification**

23.     On December 11, 2020, Milwaukee Police Officers, while conducting surveillance at DAVIS's listed address of 2627 N 24th Street, Milwaukee, Wisconsin, observed an unknown individual exit the residence. The individual was approximately 30 years of age, approximately 5'08" tall, and approximately 170 lbs., closely matching the physical description of Boost Suspect #1 and AT&T Suspect #2, from the November 23, 2020 and December 05, 2020 robberies, respectively.

24.     The individual walked to a vehicle that was parked in front of DAVIS's residence. The vehicle was registered to K.T. (DOB XX/XX/1992) at 4208 W Hampton Avenue, Milwaukee, Wisconsin. A search of the Milwaukee Police Department's CAD system showed a call on January 27, 2020 where Gregory BELL called the Milwaukee Police Department and provided his address of 4208 W Hampton Avenue, Milwaukee, Wisconsin.

25.     TFO Strasser queried Facebook.com for the name "GREGORY BELL", which returned the account: facebook.com/youngsavage.bell. The Facebook User ID associated with this account is: 100001529331352. A review of the publicly viewable postings associated with this account revealed Facebook Live videos from October 20, 2020 and December 10, 2020 in which

7

BELL is riding in the suspect vehicle. The interior of the vehicle in the video matches stock photos of a 2015 Kia Optima, there is an after-market, light-colored steering wheel cover, and a light blue article on the dashboard where the VIN plate cover is located. There are also multiple pictures matching the physical description of Boost Suspect #1 and AT&T Suspect #2, as well as the known photographs of BELL, which were previously located in the various law enforcement databases.

26.     TFO Strasser then conducted a publicly viewable search of BELL's Facebook friends and located DAVIS's Facebook page. The page returned to the account: facebook.com/dadon.carlito.1. The Facebook User ID associated with this account is: 100043754003109. A review of the publicly viewable postings associated with this account revealed multiple pictures matching the physical description of Boost Suspect #3 and AT&T Suspect #1, as well as the known photographs of DAVIS, which were previously located in the various law enforcement databases.

### December 16, 2020 Search Warrant

27.     On December 16, 2020 a search warrant signed by Commissioner Barry Phillips was executed at DAVIS's residence at 2627 N 24th Street, Milwaukee, Wisconsin by the Milwaukee Police Department and the FBI Milwaukee Area Violent Crimes Task Force.

28.     During a search of the residence, Milwaukee Police Detectives and FBI Agents located a black handgun with a silver ejection port (Taurus Arms; G3C; 9mm; serial #ABH770790), identical to the handgun used by Boost Suspect #3 and AT&T Suspect #1 in the November 23, 2020 and December 05, 2020 robberies. Detectives and Agents also located a pair of black shoes with a black plastic metatarsal protector and a pair of light blue jeans with wear on the front pockets, closely matching the clothing worn by Boost Suspect #3 in the November 23, 2020 robbery.

8

29.     During a subsequent interview of DAVIS, who was taken into custody on a Violation of Probation warrant, he requested a lawyer and did not provide any information to law enforcement.

## III.     FACEBOOK INFORMATION

30.     Facebook owns and operates a free-access social networking website of the same name that can be accessed at http://www.facebook.com.  Facebook allows its users to establish accounts with Facebook, and users can then use their accounts to share written news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

31.     Facebook asks users to provide basic contact and personal identifying information to Facebook, either during the registration process or thereafter.  This information may include the user's full name, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers (for password retrieval), physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.  Facebook also assigns a user identification number to each account.

32.     Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network.  Facebook assigns a group identification number to each group.  A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request."  If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other.  Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

33.     Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts.  By adjusting these privacy settings, a

9

Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users. A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings. Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

34. Facebook users can create profiles that include photographs, lists of personal interests, and other information. Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet. Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list. In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times. A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

35. Facebook allows users to upload photos and videos, which may include any metadata such as location that the user transmitted when s/he uploaded the photo or video. It also provides users the ability to "tag" (i.e., label) other Facebook users in a photo or video. When a user is tagged in a photo or video, he or she receives a notification of the tag and a link to see the photo or video. For Facebook's purposes, the photos and videos associated with a user's account will include all photos and videos uploaded by that user that have not been deleted, as well as all photos and videos uploaded by any user that have that user tagged in them.

36. Facebook users can exchange private messages on Facebook with other users. These messages, which are similar to e-mail messages, are sent to the recipient's "Inbox" on

10

Facebook, which also stores copies of messages sent by the recipient, as well as other information. Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile. In addition, Facebook has a Chat feature that allows users to send and receive instant messages through Facebook. These chat communications are stored in the chat history for the account. Facebook also has a Video Calling feature, and although Facebook does not record the calls themselves, it does keep records of the date of each call.

37.    If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

38.    Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages. Facebook users can "like" Facebook posts or updates, as well as webpages or content on third-party (*i.e.*, non-Facebook) websites. Facebook users can also become "fans" of particular Facebook pages.

39.    Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

40.    Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present. The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend. The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

41.    Facebook Notes is a blogging feature available to Facebook users, and it enables users to write and post notes or personal web logs ("blogs"), or to import their blogs from other services, such as Xanga, LiveJournal, and Blogger.

11

42.     The Facebook Gifts feature allows users to send virtual "gifts" to their friends that appear as icons on the recipient's profile page.  Gifts cost money to purchase, and a personalized message can be attached to each gift.  Facebook users can also send each other "pokes," which are free and simply result in a notification to the recipient that he or she has been "poked" by the sender.

43.     Facebook also has a Marketplace feature, which allows users to post free classified ads.  Users can post items for sale, housing, jobs, and other items on the Marketplace.

44.     In addition to the applications described above, Facebook also provides its users with access to thousands of other applications ("apps") on the Facebook platform.  When a Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

45.     Some Facebook pages are affiliated with groups of users, rather than one individual user.  Membership in the group is monitored and regulated by the administrator or head of the group, who can invite new members and reject or accept requests by users to enter.  Facebook can identify all users who are currently registered to a particular group and can identify the administrator and/or creator of the group.  Facebook uses the term "Group Contact Info" to describe the contact information for the group's creator and/or administrator, as well as a PDF of the current status of the group profile page.

46.     Facebook uses the term "Neoprint" to describe an expanded view of a given user profile.  The "Neoprint" for a given user can include the following information from the user's profile:  profile contact information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings;

12

rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications.

47.     Facebook also retains Internet Protocol ("IP") logs for a given user ID or IP address. These logs may contain information about the actions taken by the user ID or IP address on Facebook, including information about the type of action, the date and time of the action, and the user ID and IP address associated with the action.  For example, if a user views a Facebook profile, that user's IP log would reflect the fact that the user viewed the profile, and would show when and from what IP address the user did so.

48.     Social networking providers like Facebook typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number).  In some cases, Facebook users may communicate directly with Facebook about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users.  Social networking providers like Facebook typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

49.     As explained herein, information stored in connection with a Facebook account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion.  In my training and experience, a Facebook user's "Neoprint," IP log, stored electronic communications, and other data retained by Facebook, can indicate who has used or controlled the Facebook account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant

13

at a residence. For example, profile contact information, private messaging logs, status updates, and tagged photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Facebook account at a relevant time. Further, Facebook account activity can show how and when the account was accessed or used. For example, as described herein, Facebook logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation. Such information allows investigators to understand the geographic and chronological context of Facebook access, use, and events relating to the crime under investigation. Additionally, Facebook builds geo-location into some of its services. Geo-location allows, for example, users to "tag" their location in posts and Facebook "friends" to locate each other. This geographic and timeline information may tend to either inculpate or exculpate the Facebook account owner. Last, Facebook account activity may provide relevant insight into the Facebook account owner's state of mind as it relates to the offense under investigation. For example, information on the Facebook account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

50.     Therefore, the computers of Facebook are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, transaction information, and other account information.

## IV.    INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

51.    I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Facebook to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment.

## V.    CONCLUSION

52.    Based upon the facts contained within this affidavit, I believe that probable cause exists to search Carlos DAVIS's Facebook Account and Gregory BELL's Facebook Account for further evidence of theirs and others' involvement in the armed Hobbs Act robberies described above.

15

## ATTACHMENT A

*Property to Be Searched*

To the extent that the information described in Attachment B is within the possession, custody, or control of Facebook, Facebook is required to disclose to the government the information for the following accounts and dates:

| FACEBOOK NAME | FACEBOOK IDENTIFICATION (UID) | DATES |
|---|---|---|
| Dadon Carlito | 100043754003109 | October 01, 2020 to the Present |
| Greg Pdubb Bell | 100001529331352 | October 01, 2020 to the Present |

**ATTACHMENT B**

**Particular Things to be Seized**

**I.      Information to be disclosed by Facebook**

To the extent that the information described in Attachment A is within the possession, custody, or control of Facebook, including any messages, records, files, logs, or information that have been deleted but are still available to Facebook, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Facebook is required to disclose the following information to the government for each user ID listed in Attachment A:

a.      All contact and personal identifying information, including**:** full name, user identification number, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

b.      All activity logs for the account and all other documents showing the user's posts and other Facebook activities;

c.      All photos uploaded by that user ID and all photos uploaded by any user that have that user tagged in them;

d.      All profile information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

17

e.      All other records of communications and messages made or received by the user, including all private messages, chat history, video calling history, and pending "Friend" requests;

f.      All "check ins" and other location information;

g.      All IP logs, including all records of the IP addresses that logged into the account;

h.      All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

i.      All information about the Facebook pages that the account is or was a "fan" of;

j.      All past and present lists of friends created by the account;

k.      All records of Facebook searches performed by the account;

l.      All information about the user's access and use of Facebook Marketplace;

m.      The types of service utilized by the user;

n.      The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

o.      All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

p.      All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

## II.      Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence, and instrumentalities of violations of 18 U.S.C. §§ 1951(a) (Hobbs Act robbery) and 18 U.S.C. 924(c)

18

(use of firearm during a crime of violence), since October 01, 2020, for the user ID's identified on Attachment A, information pertaining to the following matters:

(a) The relevant offense conduct, any preparatory steps taken in furtherance of the criminal scheme, and communications between Carlos DAVIS, Gregory BELL, and others related to the relevant offense conduct of robbery or Carlos DAVIS's or Gregory BELL's possession of a firearm.

(b) Evidence indicating how and when the Facebook account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Facebook account owner;

(c) Evidence indicating the Facebook account owner's state of mind as it relates to the crimes under investigation;

(d) The identity of the person(s) who created or used the user ID; and

(e) The identity of the person(s) who communicated with the user ID about matters relating to relevant offense conduct of robbery.

19